**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| W&WSENS DEVICES INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. *and* SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 2:24-CV-00854-JRG |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Renewed Motion to Transfer (the "Motion") filed by Defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") (together, "Samsung"). (Dkt. No. 58). In the Motion, Samsung moves to transfer this case to the United States District Court for the Northern District of California ("NDCA"). (*Id.* at 1). Having considered the Motion and its related briefing, and for the reasons set forth herein, the Court finds that the Motion should be **DENIED**.

## I. BACKGROUND

On the April 16, 2025, Plaintiff W&Wsens Devices Inc. ("Plaintiff") filed the Second Amended Complaint for Patent Infringement (the "SAC"). (Dkt. No. 52). In the SAC, Plaintiff accuses Samsung of infringing six (6) patents: U.S. Patent No. 12,243,948; U.S. Patent No. 12,087,871; U.S. Patent No. 11,621,360; U.S. Patent No. 10,468,543; U.S. Patent No. 10,446,700; and U.S. Patent No. 9,525,084 (collectively, the "Asserted Patents"). (Dkt. No. 52 ¶¶ 25–32). Generally, each of the Asserted Patents relates to Complimentary Metal-Oxide Semiconductor

("CMOS") image sensors which "capture light and convert it into an electrical signal and are used in almost every smartphone and digital camera today." (*Id.* ¶¶ 15, 33.)

The SAC provides that Samsung of makes, uses, sells, and offers for sale within the United States, and imports into the United States, several infringing products. (*Id.* ¶ 44). Those products include Samsung's CMOS image sensors and time-of-flight sensors (the "Accused Sensors"). (*Id.*). Those products also include Samsung's products which include the CMOS image sensors, such as Samsung's Galaxy product line (the "Accused Smartphones") (together with the Accused Sensors, the "Accused Products"). (*Id.*).

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). The question of whether a suit "might have been brought" in the transferee forum encompasses subject matter jurisdiction, personal jurisdiction, and propriety of venue. *Viking Techs., LLC v. Assurant, Inc.*, 2021 WL 3520756, at *1 (E.D. Tex. June 21, 2021) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960)). If this threshold burden is satisfied, the party seeking transfer must then establish that transfer is warranted in the interest of convenience.

In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Fifth Circuit's non-exhaustive list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private interest factors include: (1) "the relative ease of access to sources of proof," (2) "the availability of compulsory process to secure the attendance of witnesses," (3) "the cost of attendance for willing witnesses," and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." (*Id.*). The public interest factors include: (1) "the administrative difficulties flowing from court congestion," (2)

"the local interest in having localized interests decided at home," (3) "the familiarity of the forum with the law that will govern the case," and (4) "the avoidance of unnecessary problems of conflict of laws or the application of foreign law." (*Id.*).

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's elevated burden of proof. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). To support its claim for a transfer under § 1404(a), the defendant must demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. (*Id.*). Absent such a showing, however, the plaintiff's choice is to be respected. (*Id.*). "When deciding a motion to transfer under § 1404(a), the Court may consider undisputed facts outside of the pleadings, such as affidavits or declarations, but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Hammers v. Mayea-Chang*, 2019 WL 6728446, at *4 (E.D. Tex. Dec. 11, 2019) (collecting cases).

## III. ANALYSIS

### (a) Whether this case could have been brought in the NDCA?

The threshold inquiry is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203. Plaintiff does not dispute that it could have brought this case in the NDCA as SEC is a foreign corporation and SEA has an office in Mountain View, CA. (Dkt. No. 58 at 5; *see also* Dkt. No. 62).

Accordingly, the Court finds that Plaintiff could have brought this case in the NDCA.

**(b) Private interest factors**

The parties dispute whether the private interest factors weigh in favor of transfer. The Court addresses each of these factors in turn.

***(1) The relative ease of access to sources of proof***

First, Samsung argues that the relative ease of access to sources of proof favors transfer. (Dkt. No. 58 at 5). As support, Samsung points to three (3) categories of sources of proof. (*Id*. at 6–10). The Court addresses each category below.

*(A) Samsung's sources of proof*

In the Motion, Samsung argues that its own sources of proof are more easily accessed in the NDCA than the Eastern District of Texas ("this District"). (Dkt. No. 58 at 6–7). Samsung maintains that, while the "vast majority, if not all, of" SEC's document custodians, technical documents, and physical evidence is in the Republic of Korea ("South Korea"), South Korea is closer to the NDCA than this District. (*Id*.). Samsung also asserts that third-party Samsung Semiconductor, Inc. ("SSI") has technical documents relating to the function and operation of the Accused Sensors in the NDCA. (*Id*. at 7 (citing Dkt. No. 58-2 ¶¶ 10–15)). According to Samsung, these technical documents are more relevant than those held by SEA in this District. (*Id*.; *see also* Dkt. No. 67 at 2).

Plaintiff argues in response that Samsung's sources of proof are centered in this District, not the NDCA. (Dkt. No. 62 at 4). Plaintiff asserts that SEA generates testing documents for the Accused Smartphones and financial records for its sales thereof in Plano, Texas. (*Id*. at 4–5). Additionally, Plaintiff argues that SEC's sources of proof are equally accessible in both this District and the NDCA because those sources of proof are in South Korea. (*Id*. at 5, 7 (citation omitted)).

The Court disagrees with Samsung. The Court notes that Samsung weighs SSI's source of proof twice, once as a part of Samsung's sources of proof and once as a third-party source of proof. (*See* Dkt. No. 58 at 7 (citing Dkt. No. 58-2 ¶¶ 10–15); *Id*. at 8). The Court declines to consider SSI's sources here as doing so would allow "a single source of proof [to] . . . unduly influence the analysis." *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-cv-00513-JRG, 2018 WL 2329752 at *3 (E.D. Tex. May 23, 2018) (citation omitted).

Additionally, SEC's sources of proof do not weigh in favor of transfer. SEC's sources are, by Samsung's own admission, almost entirely in South Korea. (Dkt. No. 58 at 6–7). Thus, "the relative ease of access to [SEC's] documents stored abroad [in South Korea] does not substantially change across different districts and is therefore neutral." *Sonus Networks, Inc. v. Metaswitch Networks Ltd.*, 2019 WL 11025873, at *5 (E.D. Mar. 27, 2019) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009)).

On the other hand, the Court finds that SEA's sources of proof disfavors transfer. Indeed, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *See Monterey Research, LLC v. Renesas Elect. Corp.*, No. 2:24-cv-00238-JRG, 2025 WL 1953107, at *4 (E.D. Tex. Jul. 16, 2025) (quoting *In re Genentech*, 566 F.3d at 1345 (cleaned up)). SEA is an accused infringer in this case with an entire division within this District that employs more than one thousand (1,000) people. (62-2 at 36:1–3). Further, those employees generate and maintain documents related to the sale and testing of the accused products.[1] (Dkt. No. 62-2 at 26:7–27:3, 45:2–16). Although Samsung disputes the relevance of these documents, the Court "must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Hammers*, 2019 WL 6728446, at *4 (collecting cases).

[1] The Court also notes that SEA likely has physical samples of the Accused Products as it conducts testing of those Accused Products in this District.

Accordingly, the Court finds that Samsung's sources of proof disfavor transfer.

*(B) Plaintiff's sources of proof*

Samsung then argues that Plaintiff's sources of proof are in the NDCA, not this District. (Dkt. No. 58 at 8). As support, Samsung notes that Plaintiff's headquarters are in the NDCA. (*Id.* (citing Dkt. No. 52 ¶ 2)). Samsung also asserts that Plaintiff's initial disclosures provide that seven (7) of Plaintiff's witnesses reside in California and should have documentation relating to invalidity, pre-suit damages, and unenforceability. (*Id.*).

Plaintiff argues in response that its sources of proof disfavor transfer for two (2) reasons. (Dkt. No. 62 at 9). First, Plaintiff insists that its documents are electronically stored and "equally accessible from anywhere in the world." (Dkt. No. 62 at 9). Second, Plaintiff asserts that transfer is disfavored under this factor because Plaintiff has "substantially complete[d]" its document production in this case. (*Id.*).

The Court notes that "the relevant inquiry for this factor is the ease of access to where information is *stored*." *Sonus*, 2019 WL 11025873, at *5 (emphasis in original) (citations omitted); *see also In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) (citation omitted). Here, there is no dispute that Plaintiff's sources of information are stored in the NDCA. Accordingly, accessing these sources of proof in the NDCA would be easier than in this District.

However, it is also undisputed that Plaintiff's sources of information are electronic in nature. (*See* Dkt. No. 67 at 3). If "'the movant has identified no sources of proof that cannot be transferred electronically,'" the Court may "'diminish[] the importance of this factor in the overall transfer analysis.'" *See C&J Spec Rent Serv., Inc. v. LEAM Drilling Sys., LLC*, No. 2:19-cv-00079-JRG-RSP, 2019 WL 3017379, at *5 (E.D. Tex. Jul 10, 2019) (citation omitted)*; In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022) ("The location of evidence bears

much more strongly on the transfer analysis when, as in *Volkswagen*, the evidence is physical in nature").

The Court notes some measure of inverted logic in Samsung's argument, as it argues in effect that the ***inconvenience to Plaintiff*** (to produce its sources of proof located in the NDCA) should support denial of Plaintiff's expressed preference to try this case where it chose to file it, i.e., in this District. Perhaps some may consider that venue analysis is not restrained by logic, but nevertheless this line of argument from Samsung seems to turn logic on its head.

Accordingly, the Court finds that, while Plaintiffs' sources of proof might artificially favor transfer, the sources have reduced weight in the overall transfer analysis, to the extent they have any real weight at all.

*(C) Third-party sources of proof*

Finally, the parties dispute whether (5) third-party sources of proof weigh in favor of transfer. The Court discusses each in turn.

*(i) SSI's sources of proof*

Samsung first argues that third-party SSI's sources of proof favor transfer. (Dkt. No. 58 at 8). Specifically, Samsung provides that SSI has "electronic documents" relating to the sales and marketing of the Accused Sensors that are stored in the NDCA. (*Id.*).

Plaintiff emphasizes the electronic nature of SSI's sources of proof in its response. (Dkt. No. 62 at 7–8). According to Plaintiff, "[t]here is no indication that there are any relevant SSI documents that are only accessible in [the] NDCA" as SEC "has electronic access to all of SSI's documents." (*Id.*).

The parties have not meaningfully disputed that it would be easier to access SSI's documents in the NDCA than in this District. However, and by Samsung's own admission, these

sources are "electronic documents . . . stored on servers in NDCA and/or on laptops." (Dkt. No. 58 at 9). Thus, and similar to above, the Court may "'diminish[] the importance of this factor in the overall transfer analysis.'" *See C&J Spec*, 2019 WL 3017379, at *5 (citation omitted).

Accordingly, the Court finds that SSI's sources of proof favor transfer but have reduced weight in the overall transfer analysis.

*(ii) Google's sources of proof*

Second, Samsung argues that third-party Google—SSI's "largest customer" of the Accused Sensors—has sources of proof that favor transfer. (Dkt. No. 58 at 9). As support, Samsung contends that Google "likely maintains" physical samples of the Accused Sensors and documents related to its transactions with SSI in its headquarters, which is in the NDCA. (*Id.*; *see also* Dkt. No. 67 at 3).

Plaintiff responds that Samsung has "fail[ed] to establish that Google is an important third-party source of evidence." (Dkt. No. 62 at 11). As support, Plaintiff notes that Samsung has not identified any prior art that is tied to Google in its invalidity contentions. (*Id*. at 11 (citing Dkt. No. 62-1 ¶ 28); *see also* Dkt. No. 73 at 4). Further, Plaintiff contends that Samsung has not shown that Google's sources of proof are in the NDCA as Google has offices across the country—including Texas. (Dkt. No. 73 at 4).

The Court finds that, while Samsung speculates that Google has sources of proof in its headquarters within the NDCA, such speculation has an element of credibility to it. (*See* Dkt. No. 58 at 9). After all, it is only logical that Google has sources of proof related to its transactions with SSI for the Accused Sensors. (Dkt. No. 58-2 ¶ 16). However, the fact that Samsung conditions its assertion as only being "likely" means such must not be treated equally and in the same way as a direct statement based on Samsung's personal knowledge.

Accordingly, the Court finds that, to a lesser degree, Google's sources of proof favor transfer.

*(iii) Potential witnesses' sources of proof*

Third, Samsung identifies potential witnesses listed in Plaintiff's initial disclosures that "should have information relating to the circumstances surrounding [Plaintiff's] willful allegations." (*Id*. at 9).

The Court disagrees. "This factor focuses on the location of '***documents and physical evidence***.'" *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (emphasis added). However, Samsung has not alleged that these witnesses have any documents or physical evidence, and they have not identified any documents or physical evidence for the Court's consideration. *See C&J Spec*, 2019 WL 3017379, at *5 ("This argument is entitled to lesser weight because Defendants do not specifically identify any documents or physical evidence and instead provide largely conclusory statements"). Instead, Samsung provides that the witnesses "should have information." (Dkt. No. 62 at 9). Such a vague argument falls well short of showing that the potential witnesses have sources of proof that would be easier to access in the NDCA as compared to this District.

Accordingly, the Court finds that these potential witnesses have no bearing on the transfer analysis.

*(iv) Third-party prior art sources of proof*

Fourth, Samsung contends that it will "likely seek" prior art, including system prior art, that "is potentially critical" from third parties in the NDCA, such as: Intel Corp., OMNIVISION Technologies, Inc., and CMOS Sensor Inc. (*Id*. at 10).

Plaintiff responds by arguing that Samsung has not met its burden of showing that the NDCA is a clearly more convenient venue for these third-party prior art sources of proof under

this factor. (Dkt. No. 73 at 4). Similar to above, Plaintiff asserts that "Samsung [has] failed to show that the relevant evidence is in California as opposed to other offices." (*Id.*).

The Court finds that, as above, Samsung has speculated that there are prior art systems in the NDCA when a direct assertion based on a representation of personal knowledge is what should be presented to the Court. (*See* Dkt. No. 58-15).

Accordingly, the Court finds that, to a lesser degree, the third-party prior art sources of proof identified by Samsung favor transfer.

*(v) SAS's sources of proof*

Finally, Samsung contends that third-party Samsung Austin Semiconductor's ("SAS") presence in Austin, Texas has little weight in the transfer analysis. (Dkt. No. 58 at 10). Samsung asserts that SAS "is only involved in manufacturing the logic dies" for a subset of the Accused Sensors in Austin, Texas, not this District. (Dkt. No. 58 at 4, 10). Samsung also disputes whether SAS generates any technical documents related to its manufacturing of logic dies, asserting that these documents are instead created and maintained by SEC in South Korea. (Dkt. No. 67 at 3).

Plaintiff argues in response that third-party SAS has sources of proof that would be easier to access in this District when compared to the NDCA. (Dkt. No. 62 at 8–9). Specifically, Plaintiff maintains that SAS generates technical documents related to the manufacture of the logic dies in Austin, Texas. (*Id.* (citing Dkt. No. 62-6 at 21:22–22:5)).

The Court agrees with Plaintiff. As an initial matter, the record shows that SAS generates "proposal[s]" to modify specifications for the logic dies in Austin, Texas. (Dkt. No. 62-6 at 21:22–22:6). Although Samsung disputes this, the Court must "draw all reasonable inferences and resolve all factual conflicts in favor of [Plaintiff]." *Hammers*, 2019 WL 6728446, at *4 (collecting cases). Moreover, the proposals are generated within this State. (Dkt. No. 58 at 4). It is therefore easier

to access these proposals from this District as compared to the NDCA. *See In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).

Accordingly, the Court finds that the third-party sources of proof identified by Samsung weigh in favor of transfer, but only slightly.

*(D) Conclusion*

The Court has therefore found that: Samsung's sources of proof disfavor transfer; Plaintiff's sources of proof favor transfer but have reduced weight; two (2) third-party sources of proof (Google and third-party prior art sources) slightly favor transfer; one (1) third-party sources of proof (SSI) favors transfer but has reduced weight; one (1) third-party source of proof (SAS) disfavors transfer; and one (1) third-party source of proof (the potential witnesses) is neutral.

Accordingly, and in light of the above, the Court finds that this factor is essentially neutral.

***(2) The availability of compulsory processes to secure witnesses' attendance***

Second, Samsung argues that the compulsory processes factor "[s]trongly" [f]avors [t]ransfer" because "most, if not all," third-party witnesses are in the NDCA. (Dkt. No. 58 at 10–11). As support, Samsung identifies fifteen (15) witnesses who are undisputedly within the full subpoena powers of the NDCA but not this District: three (3) former Samsung employees; five (5) SSI employees; six (6) of Plaintiff's former or current consultants; and one (1) lab technician who conducted Plaintiff's teardown testing. (Dkt. No. 67 at 4; Dkt. No. 58 at 11–12). Samsung also identifies Google as a potential unwilling witness within the full subpoena powers of the NDCA. (Dkt. No. 58 at 11). Further, Samsung points to Plaintiff's identification of eight (8) companies that "have offices in [the] NDCA and have information regarding [Plaintiff's] attempts to sell or license the purported inventions in the Asserted Patents." (*Id.* at 12). Although Samsung notes that there is no indication that any of these twenty-three (23) witnesses are unwilling witnesses,

Samsung maintains that such a lack of indication supports a presumption that the witnesses should be considered under this factor. (*Id*. at 12–13 (citations omitted)).

In response, Plaintiff argues that this factor disfavors transfer because this District is better able to secure the attendance of witnesses through compulsory processes. (Dkt. No. 62 at 9). Plaintiff identifies nine (9) witnesses who are subject to the compulsory process within this District: one (1) of Plaintiff's former employees (Siraj ElAhmadi) and eight (8) companies with offices in Texas. (*Id*. at 9–10). Plaintiff also lists six (6) other witnesses who are outside of this District and the NDCA but "are closer to this District:" one (1) attorney who prosecuted the Asserted Patents (Ivank Kavrukov) and five (5) companies that "are closer to this District than [the] NDCA." (*Id*. at 10). Additionally, Plaintiff disputes whether some of Samsung's unwilling witnesses are sufficient to support transfer. (*Id*. at 10–11). Specifically, Plaintiff asserts that Samsung has offered "no evidence that the Google personnel who are potentially relevant to this case are located within California as opposed to Google's offices in Texas or elsewhere in the country." (*Id*. at 11). Plaintiff also asserts that all but one (1) of the nine (9) companies identified by Samsung that have offices in the NDCA also have offices in Texas. (*Id*.).

As an initial matter, it is appropriate to consider Samsung's identified unwilling witnesses under this factor. If there is no indication that a witness is willing or unwilling, as there is here, the Court "must presume utilization of the Court's subpoena power will be required" and consider the witnesses under this factor. (*See* Dkt. No. 58-26 at 12–13; *AGIS*, 2018 WL 2329752 at *6 (citation omitted)). In light of the above, the record shows that there are more potentially unwilling witnesses in or closer to the NDCA than this District. The NDCA may therefore compel more unwilling witnesses than this District. *See In re Google LLC*, 58 F.4th 1379, 1385 (Fed. Cir. 2023).

Accordingly, the Court finds that the compulsory processes factor favors transfer.

***(3) The cost of attendance for willing witnesses***

Samsung then argues that the cost of attendance for willing witnesses "indisputabl[y]" favors transfer. (Dkt. No. 58 at 13). As support, Samsung identifies five (5) willing witnesses who reside in the NDCA: Jonathan Charles (Samsung Catalyst Fund employee) and four (4) of Plaintiff's witnesses. (Dkt. No. 58 at 6, 8; *see also* Dkt. No. 67 at 4). Samsung also identifies eight (8) SEC witnesses in South Korea and two (2) of Plaintiff's witnesses in other parts of California. (*Id.*). Samsung asserts that, for these witnesses, the cost of attendance is lower in the NDCA than in this District. (*Id.* at 14). Specifically, Samsung points out that South Korea and parts of California outside of the NDCA are much closer to the NDCA than this District, reducing overall cost of attendance. (*Id.*)

Plaintiff responds that the cost of attendance for willing witnesses is lower in this District than the NDCA. (Dkt. No. 62 at 12). Plaintiff notes that SEA's office within this District hosts over 1,000 employees. (*Id.* (citing Dkt. No. 62-3 at 4)). Additionally, and as to SEC's witnesses in South Korea, Plaintiff contends that a reduced cost of lodging and greater flexibility in flight times favors this District. (*Id.* (citations omitted)).

The Court finds that this factor is neutral. While South Korean-based witnesses "will be required to travel a significant distance no matter where they testify," the delta from South Korea as between this District and the NDCA is material. *In re Genentech*, 566 F.3d at 1344; *but see In re Tik Tok, Inc.*, 85 F.4th at 361 ("The district court determined that this factor was neutral primarily because 'the key witnesses and the employee at the heart of the misappropriation claim are in China' … That conclusion ignores our 100-mile test") (internal citation omitted). Additionally, the NDCA is either home to or undisputedly closer than this District for Plaintiff's witnesses in California.

On the other hand, SEA's influence on this factor should not be unduly discounted. SEA has a major operation with over 1,000 employees in this District that is responsible for marketing, selling, repairing, and testing the Accused Smartphones. (Dkt. No. 62 at 4–5). Plaintiff has certainly shown that SEA has "'relevant and material information'" to this case. *In re SAP America, Inc.*, 133 F.4th 1370, 1376 (Fed. Cir. 2025) (citation omitted).

Accordingly, the Court finds that this factor is neutral.

***(4) All other practical problems***

The parties agree that this factor is neutral. (Dkt. No. 58 at 14; Dkt. No. 62 at 13). The Court agrees and, accordingly, finds that this factor is neutral.

**(c) Public interest factors**

Finally, the parties dispute whether the public interest factors weigh in favor or against transfer. The Court addresses each factor in turn.

***(1) The administrative difficulties flowing from court congestion***

Samsung argues that, as Plaintiff "is not engaged in product competition in the marketplace," this factor is neutral and should be afforded little weight. (Dkt. No. 58 at 15 (citing *In re Google*, 58 F.4th at 1383); Dkt. No. 67 at 5).

Plaintiff responds by arguing that the Court should not unduly discount that this District is significantly less congested and has a faster time to trail than the NDCA. (Dkt. No. 73 at 5). Indeed, the NDCA (13,564 cases) has a higher pending case load than that of this District (3,446 cases). (Dkt. No. 62-19 at 2–3). Moreover, and on average between 2019 and 2024, the NDCA's median time to trail (34.5 months) was more than a year longer than this District's (20.3 months). (Dkt. No. 62-18 at 2–3).

The Court finds that the court congestion factor is neutral. It is a "clear abuse of discretion to accord this factor any weight" if, as it is here, it is undisputed that the patentee "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution and give some significance to the time-to-trial difference." *In re Google*, 58 F.4th at 1383; *but see Optimum Imaging Technologies LLC v. Sony Corporation*, No. 4:23-cv-00928-ALM, 2025 WL 904380, at *8 (E.D. Tex. 2025) ("The holding in *Google II* stemmed from time-to-trial differences rather the court congestion argument presented here"). Although the Court finds it strange to consider private needs under a public interest factor concerned with the "[a]dministrative difficulties follow[ing] ***for courts*** when litigation is piled up in congested centers," the Court is nevertheless bound to follow *In re Google*'s guidance. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) (cited by *Volkswagen II*, 545 F.3d at 315) (emphasis added).

Accordingly, the Court finds that the court congestion factor is neutral.

***(2) The local interest in having localized interests decided at home***

Samsung argues that the NDCA has a greater local interest in deciding this case than this District. (Dkt. No. 58 at 14). Samsung reasons that the events that gave rise to Plaintiff's infringement claims occurred in the NDCA and in South Korea, not this District. (Dkt. No. 58 at 14). As support, Samsung notes that SSI and Google negotiated the sale of the Accused Sensors in the NDCA, Plaintiff is headquartered in the NDCA, and most key witnesses reside in the NDCA. (*Id*. at 14–15). Further, Samsung insists that SEA only has "generalized contacts with this District" that "are insufficient to weigh against transfer." (Dkt. No. 67 at 5).

Plaintiff argues in response that the local interest factor disfavors transfer for two (2) reasons. (Dkt. No. 62 at 14). First, Samsung maintains that "the nexus of Samsung's infringement

is in Texas where SEA imports, markets, and distributes the Infringing Smartphones." (*Id*. at 14). According to Plaintiff, "99.99% of the infringing economic activity takes place" in this District. (Dkt. No. 73 at 4). Second, Plaintiff asserts the reduced importance of "non-parties" SSI and Google, noting that no research, design, or assembly of the sensors occurred in the NDCA. (Dkt. No. 62 at 15).

The Court finds that this District has a stronger local interest in deciding this case than the NDCA. This factor focuses on the location of the events giving rise to the suit, not the parties' connection to each forum. *See, e.g., In re TikTok*, 85 F.4th at 364 ("We look not to 'the parties' significant connection to each forum … but rather the significant connections between a particular venue and the events that gave rise to a suit") (citation omitted). Plaintiff alleges patent infringement, which imposes liability on "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention." 35 U.S.C. § 271(a). Here, the record shows that SEA sells, tests, and repairs the Accused Smartphones in this District and SSI sells, tests, and repairs the Accused Sensors in the NDCA. (Dkt. No. 62-1 ¶ 29). However, SEA's revenue generated from its sales (more than $1,000,000,000 USD) is ***more than 1,000X greater*** than SSI's revenue generated from its sales (less than $700,000 USD). (*Id.*). This indicates a greater commercial impact and an enhanced local interest in this District.

Accordingly, the Court finds that the local interest factor clearly disfavors transfer.

***(3) The familiarity of the forum with the law that will govern the case***

The parties agree that this factor is neutral. (Dkt. No. 58 at 15; Dkt. No. 62 at 15). The Court agrees and, accordingly, finds that this factor is neutral.

***(4) The avoidance of unnecessary problems of conflict of laws or the application of foreign law***

The parties agree that this factor is neutral. (Dkt. No. 58 at 15; Dkt. No. 62 at 15). The Court agrees and, accordingly, finds that this factor is neutral.

## IV. CONCLUSION

In view of the foregoing factors, the Court must determine whether the NDCA is "clearly more convenient" than this District. The Fifth Circuit has been careful to emphasize that district courts should not merely engage in a "raw counting" exercise which tallies up the factors favoring transfer and the factors weighing against transfer. *In re Radmax*, 720 F.3d at 290 n.8 ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology."). Instead, the Court must make factual determinations to ascertain the degree of actual convenience to be achieved, if any, and whether such rises to the level of "clearly more convenient." *See id.* Where the present and proposed forums are both roughly similar in terms of convenience, courts should not conclude that the proposed transferee forum is "clearly more convenient." *Volkswagen II*, 545 F.3d at 315. While this Court does not hold that "clearly more convenient" is equal to "clear and convincing," a movant must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning. *See id.* When carefully applying the convenience factors and the related factual arguments in each unique case, courts should be careful not to lose sight of the plaintiff's choice of forum and its historical significance in our jurisprudence. *Id.* ("[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.").

Having found that only one (1) factor favors transfer, six (6) factors are neutral, and one (1) factor clearly disfavors transfer, the Court concludes and finds that the NDCA has not shown to be a "clearly more convenient" forum for this dispute.

Accordingly, the Court finds that the Motion (Dkt. No. 58) should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 25th day of November, 2025.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE